UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH W.,

               Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06859 EAW


## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Joseph W. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 10; Dkt. 13) and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on December 7, 2016. (Dkt. 8 at 24, 209-220, 222-228).[1]  In his applications, Plaintiff alleged disability beginning May 1, 2008.  (*Id.* at 24, 222).  Plaintiff's applications were initially denied on April 12, 2017.  (*Id.* at 24, 86, 87).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Alexander Klibaner on July 30, 2019, in Rochester, New York.  (*Id.* at 44-84).  On August 27, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 24-38).  Plaintiff requested Appeals Council review; his request was denied on August 21, 2020, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-10).  This action followed.

## LEGAL STANDARD

I.      **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).   To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

- 4 -

# DISCUSSION

## I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2013.  (Dkt. 8 at 27).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 1, 2008, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: degenerative disc disease (DDD)/spondylosis at L3/4, bilateral knee osteoarthritis (OA), obesity, major depressive disorder, anxiety disorder, and posttraumatic stress disorder.  (*Id.* at 27-28).  The ALJ further found that Plaintiff's medically determinable impairments of hypertension, asthma, and history of alcohol abuse to be non-severe.  (*Id.* at 28).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*).  In particular, the ALJ considered the requirements of Listings 1.04, 1.02, 12.04, 12.06, and 12.15 in reaching his conclusion.  (*Id.* at 28-30).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff] can stand/walk for 4 hours in an 8-hour workday; can occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can tolerate occasionally exposure to pulmonary irritants; is able to carry out simple, routine tasks, defined to include unskilled tasks that take no more than a

month to learn the techniques, acquire the information, and develop the
facility needed for average performance of those tasks; can carry out those
tasks for 2-hour periods throughout a 40-hour workweek; is able to make
simple work-related decisions; can tolerate occasional interactions with
coworkers and the general public; can tolerate simple changes in the work
routine.

(*Id.* at 30).   At step four, the ALJ found that Plaintiff was able to perform past relevant

work as a backroom assistant/material handler.  (*Id.* at 36).

Alternatively, the ALJ relied on the testimony of a vocational expert ("VE") to

conclude at step five that, considering Plaintiff's age, education, work experience, and

RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff

could perform, including the representative occupations of assembly line worker, retail

marker, and mail sorter.  (*Id.* at 37).   Accordingly, the ALJ found that Plaintiff was not

disabled as defined in the Act.  (*Id.*).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the

Commissioner, arguing that (1) the ALJ did not properly weigh the opinion offered by

Licensed Master Social Worker (LMSW) Christopher Fana, (2) the RFC did not account

for Plaintiff's stress limitations, and (3) the ALJ erred by relying on Harbinder Toor,

M.D.'s vague opinion in formulating the RFC.  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.      Weighing of LMSW Fana's Opinion

Plaintiff's first argument is that the ALJ erred in evaluating the opinion offered by LMSW Fana.  (Dkt. 10-1 at 13).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record.  Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted).

An ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision."  *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion.  This rule is

> most often employed in the context of the RFC determination when the
> claimant argues either that the RFC is not supported by substantial evidence
> or that the ALJ has erred by failing to develop the record with a medical
> opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec.

1, 2017) (quotation and citation omitted).

      Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to

apply the treating physician rule, under which a treating physician's opinion is entitled to

"controlling weight" if it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

case record[.]"  20 C.F.R. § 404.1527(c)(2).  Under the treating physician rule, if the ALJ

declines to afford controlling weight to a treating physician's medical opinion, he or she

"must consider various factors to determine how much weight to give to the opinion."

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).

An ALJ's failure to explicitly apply the requisite factors is a "procedural error."  *Estrella

v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted).  However, such error is

harmless if "a searching review of the record" confirms "that the substance of the treating

physician rule was not traversed."  *Id.* (quotations omitted).

      Whatever weight the ALJ assigns to the treating physician's opinion, he must "give

good reasons in [his] notice of determination or decision for the weight [he gives to the]

treating source's medical opinion."  20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*,

149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is

the so-called 'good reasons rule,' which is based on the regulations specifying that 'the

Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)).  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ."  *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

Under the Commissioner's regulations applicable to Plaintiff's claim, social workers, such as LMSW Fana, are not acceptable medical sources.  *See Lisa A. B. v. Comm'r of Soc. Sec.*, No. 5:20-CV-0423 (ML), 2021 WL 2555396, at *6-7 (N.D.N.Y. June 21, 2021).  Nevertheless, an ALJ should consider evidence from "other sources," such as social workers, on important issues like the severity of an impairment and any related functional effects.  *See* SSR 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006).  An ALJ may not disregard opinion evidence from a nurse practitioner or "other source" solely because it was not authored by an acceptable medical source.  *See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record").  However, the ALJ "has the discretion to determine the appropriate weight to accord the [other source]'s opinion based on all the evidence before him[.]"  *Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir. 1995).

LMSW Fana completed a Psychological Assessment for Determination of Employability on July 12, 2019.  (Dkt. 9 at 380-83).  LMSW Fana noted that Plaintiff had been receiving treatment at Genesee Mental Health Center since February of 2013.  (*Id.* at 380, 381).  He noted that Plaintiff received treatment every two weeks.  (*Id.* at 381).

LMSW Fana opined that Plaintiff has mild limitations, defined as less than 5%, in the capacity to respond appropriately to co-workers or supervisors, to maintain attention and concentration for rote tasks, and to regularly attend to a routine and maintain a schedule. He opined that Plaintiff has moderate limitations, defined as 5-10%, in following, understanding, and remembering simple instructions and directions and performing simple tasks independently and working in coordination with or proximity to others without being unduly distracted.  Finally, he opined that Plaintiff had marked limitations, defined as 11-20%, in the capacity to deal with normal work stressors.  (*Id.* at 382).  In connection with an employability determination, LMSW Fana indicated that Plaintiff is temporarily disabled/unable to work with an expected duration of three months.  (*Id.* at 383).

The ALJ gave LMSW Fana's opinion "little weight."  The ALJ explained:

> I give little weight to the July 12, 2019 opinion of Christopher Fana, MSW (Ex. 16F).  The limitations in his opinion are inconsistent with [Plaintiff's] stable and largely benign longitudinal clinical presentation to his outpatient mental health providers.  (Ex. 3F and Ex. 13F).  Additionally, the questionnaire states that the expected duration of [Plaintiff's] disability was only three months, which is not indicative of disability within the meaning of the Social Security Administration's regulations (Ex. 16F).

(Dkt. 8 at 36).

Plaintiff raises two issues with regard to the ALJ's assessment of LMSW Fana's opinion.  He contends first that the ALJ did not discuss any of the requisite regulatory factors and second, that the ALJ's summary rejection of LMSW Fana's opinion was too conclusory to deem it based on substantial evidence.  The Court disagrees.

Plaintiff's statement that the ALJ did not consider any of the regulatory factors is belied by the record.  As discussed above, the written determination makes plain that the

ALJ considered that LMSW Fana was a social worker and considered the consistency of his opinion with the record as a whole, in accordance with the regulations.  The fact that the ALJ did not specifically discuss the consistency between LMSW Fana's opinion and that of consultative examiner Yu-Ling Lin, Ph.D., does not require remand.  *See Frederick C. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1078 (CFH), 2021 WL 466813, at *14 (N.D.N.Y. Feb. 9, 2021) ("the ALJ is not required to mention or discuss every single piece of evidence in the record").  The ALJ discussed both opinions and explained the weight given to each and was not required to expressly discuss their consistency or reconcile them with respect to each other.  *Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, No. 1:18-CV-00502 EAW, 2020 WL 1815754, at *5 (W.D.N.Y. Apr. 10, 2020) ("The ALJ is not required to reconcile explicitly every conflicting shred of medical testimony.  Nor is the ALJ required to mention or discuss every single piece of evidence in the record." (internal quotations and citation omitted)).  Moreover, the two opinions were not consistent:  Dr. Lin opined that Plaintiff had moderate limitations in dealing with stress and LMSW Fana opined that Plaintiff had marked limitations.  Accordingly, Dr. Lin's opinion fails to supply LMSW Fana's opinion with the corroboration Plaintiff seems to suggest.  And of course, as noted, pursuant to the regulations, a social worker's opinion is not entitled to the same weight as other treating providers.  While the ALJ is nevertheless required to evaluate the opinion and explain his reasoning in the weight given, he is not required to afford the opinion controlling weight.

Second, the ALJ provided several reasons for giving LMSW Fana's opinion little weight and his analysis was not too conclusory for the Court to evaluate his reasoning.  The opinion's inconsistency with Plaintiff's otherwise stable and largely benign longitudinal

clinical records from mental health providers is an appropriate consideration.  Plaintiff criticizes the ALJ for not citing to specific records in reaching this conclusion in connection with LMSW Fana's opinion, but the ALJ's decision provides a detailed recitation of Plaintiff's mental health history elsewhere in the decision.  (Dkt. 8 at 29-30, 32-33).

But even more fundamentally, LMSW Fana's opinion expressly states that Plaintiff's impairments were only expected to last three months.  Social security regulations provide that impairments must last or be expected to last for a continuous period of 12 months to qualify as a disability.  *Quaraish v. Comm'r of Soc. Sec.*, No. 1:19-CV-965-DB, 2020 WL 5407968, at *6 (W.D.N.Y. Sept. 9, 2020) ("A debilitating restriction must last for at least 12 months to be eligible for benefits." (citing *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018)).  Plaintiff does not even address this independent reason for not giving LMSW Fana's opinion more weight.

In sum, the ALJ properly assessed LMSW Fana's opinion, which is not entitled to controlling weight.  The ALJ discussed the opinion in the written determination and explained the weight accorded to it, and it is apparent to the Court why the ALJ gave the opinion only "little weight."  That is all that is required under the circumstances, and remand is not required on this basis.

## B.    Accounting for Stress Limitations in RFC

Plaintiff contends that the ALJ's RFC finding failed to incorporate Dr. Lin's conclusion that Plaintiff had moderate limitations in appropriately dealing with stress and that the ALJ failed to explain why he did not adopt this limitation. (Dkt. 10-1 at 15).  The Court disagrees.

As set forth above, the RFC finding included significant non-exertional limitations, including a limitation to simple, routine tasks (defined to include unskilled tasks that take no more than a month to learn the techniques, acquire the information and develop the facility needed for average performance of those tasks), simple work-related decisions, occasional interactions with coworkers and the general public, and simple changes in the work routine. (Dkt. 8 at 30). These limitations account for Dr. Lin's opinion of Plaintiff's moderate limitations in dealing with stress, which the ALJ gave substantial weight. *See, e.g, Douglas J. v. Comm'r of Soc. Sec.*, No. 1:20-CV-699-LJV, 2022 WL 976894, at \*5 (W.D.N.Y. Mar. 31, 2022) (holding that the ALJ accounted for plaintiff's testimony about being stressed in crowds "by limiting him to only occasional interaction with the public"); *Lewis v. Comm'r of Soc. Sec.*, No. 1:18-CV-150-DB, 2019 WL 3321896, at \*5 (W.D.N.Y. July 24, 2019) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning, including stress."); *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019) ("The Court is cognizant that, even without explicitly referencing a stress limitation, an RFC determination may adequately account for a claimant's stress-related limitations. For example, an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations."); *Reyes v. Colvin*, No. 14-CV-734-JTC, 2016 WL 56267, at \*6 (W.D.N.Y. Jan. 5, 2016) (finding limitation to "simple work with only occasional interaction with the public, co-workers and supervisors" accounted for opinion that the plaintiff had "moderate limitations in the ability to perform complex tasks, mild limitation in making appropriate

decisions, and moderate limitation in the ability to relate adequately with others and deal with stress"); *Lafond v. Astrue*, No. 6:12-CV-6046(MAT), 2013 WL 775369, at *12 (W.D.N.Y. Feb. 28, 2013) ("The ALJ adequately accounted for Lafond's limitations in dealing with stress by restricting him to simple and repetitive tasks; no fast-paced production requirements; the necessity of making only simple decisions; and few, if any, changes in the workplace.").  Accordingly, because the Court can glean from the decision the ALJ's rationale to include the non-exertional limitations contained in the RFC, the ALJ's failure to specifically mention stress in the RFC does not constitute reversible error in this case.  *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (holding that when "the evidence of record permits us to glean the rationale of the ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); *McGee v. Comm'r of Soc. Sec.,* No. 20-CV-03716 (JMA), 2022 WL 3912575, at *5 (E.D.N.Y. Aug. 29, 2022) ("Accordingly, while ALJ Rodgers' Decision made no explicit mention of 'stress,' the positions the ALJ identified in consultation with the testifying vocational expert accounted for Plaintiff's limitations." (citing *Figgins v. Berryhill*, 2017 WL 1184341, at *10 (W.D.N.Y. Mar. 29, 2017) ("The ALJ may not have mentioned stress explicitly, but the ALJ implicitly incorporated the effects that stress would have on plaintiff in the RFC and the questions asked of the vocational expert."))).

It was ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018); *Celia*

*A. B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-112 (CFH), 2022 WL 4225540, at *12 (N.D.N.Y. Sept. 13, 2022) ("Additionally, plaintiff does not explain what causes her stress, or how incorporating a limitation to low-stress work would change the outcome of the ALJ's decision."). The ALJ reasonably concluded that Plaintiff failed to meet his burden in this case. Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

### C.   Assessment of Dr. Toor's Psychiatric Evaluation

Finally, Plaintiff argues that the ALJ erred in relying on portions of Dr. Toor's vague opinions in formulating the RFC, particularly the conclusions relating to Plaintiff's ability to stand, walk, bend, lift, and carry.

Dr. Toor conducted a consultative internal medicine examination of Plaintiff on February 17, 2017. (Dkt. 8 at 483-86). In his medical source statement, Dr. Toor opined:

> [Plaintiff] has moderate to marked limitation standing, walking, bending, lifting, and carrying. He has moderate limitation sitting a long time.

(*Id.* at 486). Dr. Toor indicated that Plaintiff's prognosis is fair. (*Id.*).

In giving partial weight to Dr. Toor's opinion, the ALJ stated:

> I gave partial weight to the opinion of examining state agency medical consultant Dr. Toor. (Ex. 5F). Dr. Toor opined that [Plaintiff] "has a moderate to marked limitation standing, walking, bending, lifting, and carrying" and has "moderate limitation sitting a long time." (*Id.*). Although this opinion is vague insofar as "moderate to marked" does not specifically identify the degree of the [Plaintiff's] standing, walking, bending, lifting, and carrying limitations (*Id.*), I have incorporated such limitations into the [RFC]. His limitation that [Plaintiff] has "moderate limitation sitting a long time" is also vague but it is not supported by the medical evidence of record. This vague sitting limitation is inconsistent with [Plaintiff's] unremarkable right knee x-rays, lumbar x-rays showing no more than moderate findings, non-focal neurological examinations, limited/conservative treatment history

relative to his knees and back, and substantial reported activities as detailed
above.

(*Id.* at 35).  Plaintiff argues that the ALJ did not adequately explain how or why Dr. Toor's

vague opinions were incorporated into the RFC and that if he believed the opinions were

vague, the ALJ should have re-contacted Dr. Toor for clarification.

But as noted by the Commissioner, the ALJ did not solely rely on Dr. Toor's opinion

in formulating the RFC.  He also gave great weight to the opinion of state agency consultant

R. Pradham, M.D. (Dkt. 8 at 96-109).  In giving Dr. Pradham's opinion great weight, the

ALJ explained:

> His opinion is well supported by [Plaintiff's] unremarkable right knee x-rays,
> lumbar x-rays showing moderate limitations, and non-focus neurological
> examinations.  His opinion is consistent with [Plaintiff's] limited and
> conservative treatment history relative to his back and knee pain.  [Plaintiff]
> has not had any surgeries, completed any formal PT, or received any pain
> management injections.  His opinion is also consistent with [Plaintiff's]
> substantial reported activities.  However, I limited [Plaintiff] to standing
> and/or walking for 4 hours and precluded him from climbing ropes, ladders,
> and scaffolds to take into account [Plaintiff's] subjective complaints[2] of back
> and knee pain.

(Dkt. 8 at 35).  Importantly, Plaintiff has not identified any error in the ALJ's assessment

of Dr. Pradham's opinion or consideration of Plaintiff's subjective complaints.  Moreover,

---

[2]     The ALJ summarized Plaintiff's testimony relating to his physical limitations as
follows: "[h]e stated that he worked approximately 3 months as a nursing home cleaner
before his back pain forced him to stop.  He described his back pain as steady and throbbing
and reported that prolonged standing increases his pain.  [Plaintiff] described his knee pain
as sharp and he endorsed occasionally giving out of his knees while walking.  [Plaintiff]
presented to his hearing with a walker and a cane.  He testified that he has been using a can
for three and a half to four years and that he has been using a walker for a couple weeks.
He acknowledged that the devices were not medically prescribed.  He testified that he has
gained 70 pounds due his inactivity and that he now weighs 273 pounds."  (Dkt. 8 at 31).

"[t]he duty to recontact [a medical source] arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings[.]"  *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017); *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (holding that ALJ is "not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability" (quotation and citation omitted)); *Sarah C. v. Comm'r of Soc. Sec*., No. 5:19-CV-1431 (FJS), 2021 WL 1175072, at *10 (N.D.N.Y. Mar. 29, 2021) ("[S]o long as the record has no obvious gaps and contains sufficient evidence for the ALJ to render an RFC finding, she has no duty to recontact treating sources for statements or opinions.").  Here, there was ample evidence in the record upon which the ALJ could formulate the RFC, and the duty to recontact Dr. Toor was not implicated.

In sum, because the ALJ articulated the reasons for giving only partial weight for Dr. Toor's opinions and considered the record as a whole in fashioning Plaintiff's RFC, the Court finds that substantial evidence supports his determination and remand is not warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  September 26, 2022
        Rochester, New York